**ORAL ARGUMENT NOT YET SCHEDULED**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Nos. 21-1126, 21-1136, 21-1142, 21-1149, 21-1175

SOLAR ENERGY INDUSTRIES ASSOCIATION,
*Petitioner*,
v.
FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent*.

On Petition For Review Of Agency Action By The
Federal Energy Regulatory Commission, 174 FERC ¶ 61,199,
175 FERC ¶ 62,100, 175 FERC ¶ 61,228

**BRIEF OF AMICUS CURIAE PACIFICORP D/B/A PACIFIC
POWER AND ROCKY MOUNTAIN POWER SUPPORTING
PETITIONERS EDISON ELECTRIC INSTITUTE AND
NORTHWESTERN CORPORATION**

ADAM LOWNEY
*Admission Pending*
MCDOWELL RACKNER
GIBSON PC
419 SW 11th Ave, Suite 400
Portland, OR 97205
(503) 595-3926
adam@mrg-law.com

CHRISTOPHER JONES
*Counsel of Record*
TROUTMAN PEPPER
HAMILTON SANDERS LLP
401 9th Street, NW
Suite 1000
Washington, DC 20004
(202) 662-2181
chris.jones@troutman.com

*Attorneys for Amicus Curiae
PacifiCorp d/b/a Pacific Power
and Rocky Mountain Power*

## CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES PURSUANT TO CIRCUIT RULE 28(A)(1)

### I. Parties and Amici

The Opening Brief of Petitioners the Edison Electric Institute and NorthWestern Corporation d/b/a NorthWestern Energy ("NorthWestern") accurately states the parties to these appeals. No party other than PacifiCorp d/b/a Pacific Power and Rocky Mountain Power ("PacifiCorp") has appeared as amicus curiae.

### II. Ruling Under Review

An accurate reference to the ruling at issue appears in the Opening Brief of Petitioners Edison Electric Institute and Northwestern.

### III. Related Cases

An accurate statement regarding related cases appears in the Opening Brief of Petitioners Edison Electric Institute and Northwestern.

Dated: October 25, 2021

/s/ Christopher Jones
CHRISTOPHER JONES
TROUTMAN PEPPER
HAMILTON SANDERS LLP
401 9th Street, NW
Suite 1000
Washington, DC 20004
(202) 662-2181
chris.jones@troutman.com

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 29, amicus curiae PacifiCorp hereby submits the following corporate disclosure statement:

PacifiCorp is a business incorporated in the State of Oregon. PacifiCorp is a subsidiary of PPW Holdings, LLC.  PPW Holdings, LLC, is a subsidiary of Berkshire Hathaway Energy Company, which in turn is a consolidated subsidiary of Berkshire Hathaway, Inc.  Other than Berkshire Hathaway, Inc., there are no publicly held corporations that own any common stock of, or any other voting interest in, PacifiCorp.

Dated: October 25, 2021

/s/ Christopher Jones
CHRISTOPHER JONES
TROUTMAN PEPPER
HAMILTON SANDERS LLP
401 9th Street, NW
Suite 1000
Washington, DC 20004
(202) 662-2181
chris.jones@troutman.com

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................ii

GLOSSARY ........................................................................................ v

IDENTITY AND INTEREST OF AMICUS CURIAE ............................vi

STATEMENT REGARDING PERMISSION TO FILE AND AUTHORSHIP ................................................................................... vi

STATUTES AND REGULATIONS ......................................................vii

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................1

ARGUMENT ....................................................................................... 3

I.  PacifiCorp's Experience Demonstrates That Large Facilities Like Broadview Have A Viable Market For Their Power, And They Are Not The Type Of Facilities Congress Intended PURPA To Encourage ..................................................................... 3

II. Broadview Is Not A "Small" Facility, And By Concluding Otherwise, The Commission Effectively Removed The Word "Small" From The Statute................................................................. 7

III.The Commission's Focus On The Size Of Broadview's Inverters Is Arbitrary And Contrary To The Plain Language Of The Statute....................................................................................... 9

CONCLUSION ................................................................................... 11

# TABLE OF AUTHORITIES

## Cases

*Chapman v. Houston Welfare Rights Org.*,
    441 U.S. 600 (1979) ........................................................................7

*Dolan v. United States Postal Serv.*,
    546 U.S. 481 (2006) ........................................................................7

*Market Co. v. Hoffman*,
    101 U.S. 112 (1879) ........................................................................9

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997) ......................................................................11

*Williams v. Taylor*,
    529 U.S. 362 (2000) ........................................................................8

## Statutes And Rules

16 U.S.C. § 796 ..............................................................................1, 4, 8

16 U.S.C. § 824a-3 ................................................................................4

Federal Rule of Appellate Procedure 29 ..............................................vi

## Other Authorities

H.R. Rep. 95-1750 (Oct. 10, 1978)........................................................7

National Association of Regulatory Utility Commissioners,
    Aligning PURPA with the Modern Energy Landscape, A
    Proposal to FERC (Oct. 11, 2018) .....................................................5

# GLOSSARY

| | |
|---|---|
| **Broadview** | Broadview Solar |
| **FERC (or the Commission)** | Federal Energy Regulatory Commission |
| **NorthWestern** | Petitioner NorthWestern Corporation d/b/a NorthWestern Energy |
| **Order No. 872** | Order No. 872, 172 FERC ¶ 61,041 (2020) |
| **P** | Paragraph number within a Commission order |
| **PacifiCorp** | Amicus Curiae PacifiCorp d/b/a Pacific Power and Rocky Mountain Power |
| **PURPA** | Public Utility Regulatory Policies Act of 1978 |
| **R.** | Record Item Number in the Commission's Certified Index to the Record, filed on August 17, 2021 |
| **Rehearing Orders** | Commission rehearing orders under review here, issued on March 19, 2021, and June 17, 2021 |

## IDENTITY AND INTEREST OF AMICUS CURIAE

PacifiCorp d/b/a Pacific Power and Rocky Mountain Power is a public utility that serves customers in Washington, Oregon, California, Utah, Idaho, and Wyoming. Pursuant to the mandatory-purchase obligation in the Public Utility Regulatory Policies Act of 1978 ("PURPA"), PacifiCorp currently purchases power from many qualifying facilities, and PacifiCorp regularly receives requests from new qualifying facilities interested in selling their output to PacifiCorp. PacifiCorp will be legally required to purchase power from qualifying facilities that meet the eligibility requirements, as interpreted by the Federal Energy Regulatory Commission ("FERC" or "the Commission") in its orders that are the subject of this appeal.

## STATEMENT REGARDING PERMISSION TO FILE AND AUTHORSHIP

Pursuant to Federal Rule of Appellate Procedure 29(a)(2)–(3), PacifiCorp moved the Court for leave to file this brief on October 25, 2021.

This brief was not authored, in whole or in part, by counsel for any party. No person other than PacifiCorp contributed money to fund the preparation or submission of this brief. *See* Federal Rule of Appellate Procedure 29(a)(4)(E).

## STATUTES AND REGULATIONS

The pertinent statutes and regulations are contained in the Separate Statutory Addenda of Petitioner Solar Energy Industries Association and Petitioners the Edison Electric Institute and NorthWestern.

## INTRODUCTION AND SUMMARY OF ARGUMENT

PacifiCorp supports the arguments set forth in the Opening Brief of Petitioners Edison Electric Institute and NorthWestern. For the reasons explained by Petitioners and in that brief, the Commission's orders on rehearing, issued on March 19, 2021, and June 17, 2021, ("Rehearing Orders") should be vacated. The Commission's revised interpretation in the Rehearing Orders of what constitutes a "qualifying small power production facility" under PURPA is contrary to both the plain language and the intent of PURPA.

Broadview Solar ("Broadview") will consist of more than 470,000 solar panels capable of producing up to 160 megawatts of power and a 50-megawatt battery energy storage system. *See* R.13 at 9, JA__; R.5 at 2-3, 5, JA__-__, __. Together, Broadview's solar panels and battery energy storage system will be able to produce far more than 80 megawatts. Despite Broadview's large scale, the Commission determined that Broadview is a "small power production facility" under PURPA because it has a "power production capacity, which . . . is not greater than 80 megawatts," as required by 16 U.S.C. § 796(17).

However, a solar facility that can generate up to 160 megawatts of power does not require the market advantages provided by PURPA through its mandatory-purchase obligation for facilities 80 megawatts or smaller. Large solar facilities like Broadview have access to viable and liquid wholesale markets. In fact, PacifiCorp's recent open solicitations for new resources in that wholesale market demonstrate that Broadview is equal to or larger than its non-qualifying-facility competitors. While PURPA requires the Commission to encourage qualifying facility development, that encouragement is not unbounded, and the Commission's significant expansion of the size limit for qualifying small power production facilities is not necessary to effectuate the statute's intent.

The Commission's decision in the Rehearing Orders is also contrary to the plain language of the statute. By allowing a 160-megawatt facility—or indeed any facility that artificially limits its output—to qualify as a "small power production facility" with a power production capacity of 80 megawatts or less, the Commission effectively eliminated the word "small" from the statute. Under the Commission's rationale, any large, utility-scale resource could qualify as a "small power

production facility" if it installed equipment to artificially limit its output.

Moreover, to reach the conclusion that a facility with a solar array capable of producing up to 160 megawatts of power has a "power production capacity" of only 80 megawatts, the Commission relied on a single component of the facility—the inverters—which will limit the amount of power Broadview can deliver to the grid at any one time to 80 megawatts.  But inverters do not produce power, and defining the "power production capacity" of a "facility" by examining a single, non-power-producing component in isolation ignores the plain meanings of "power production capacity" and "facility."

## ARGUMENT

### I. PacifiCorp's Experience Demonstrates That Large Facilities Like Broadview Have A Viable Market For Their Power, And They Are Not The Type Of Facilities Congress Intended PURPA To Encourage

PURPA confers significant advantages on electric generation facilities that meet the requirements to be a "qualifying facility" as defined by federal law.  *See* R.30 at P 21, JA__; Order No. 872, 172 FERC ¶ 61,041, at PP 47–48 (2020) ("Order No. 872").  Most importantly, qualifying facilities have a guaranteed market for their generation

because electric utilities are legally required to purchase all the electricity generated by qualifying facilities.  16 U.S.C. § 824a-3(a)(2). Qualifying facilities therefore do not participate in competitive markets and have a statutorily conferred market advantage over non-qualifying-facility competitors.  Indeed, they enjoy statutory protection *from* competition.

In order to receive the competitive advantages conferred by PURPA, however, qualifying facilities must satisfy strictly defined statutory requirements.  16 U.S.C. § 796(17).  To become a "qualifying small power production facility," a facility must generate power using renewable resources, like solar, and a qualifying **<u>small</u>** power production facility cannot have a "power production capacity . . . greater than 80 megawatts." 16 U.S.C. § 796(17)(A).  Thus, "while PURPA provided for the encouragement of small power production, PURPA also limited the facilities which could be encouraged to those facilities with no more than 80 [megawatt] power production capacity at the same site."  Order No. 872 at P 11.  Despite its prior recognition of this important limitation, the Commission's decision in the Rehearing Orders allows utility-scale renewable energy facilities like Broadview to masquerade as **<u>small</u>**

- 4 -

power production facilities to bypass the competitive market and short-circuit the market solicitations utilities like PacifiCorp use to obtain power at the lowest price for utility customers.[*]

Moreover, since PURPA was passed in 1978, "the outlook for the development of alternatives to natural gas and oil-fired generation resources, such as renewable resources, has changed . . . dramatically." Order No. 872 at P 52 (internal citations omitted).  The Commission recently "recognized that renewable resources . . . provide a significant share of the electricity currently generated in the United States, that most renewable resources today are not [qualifying facilities], and that 65 percent of capacity additions in 2019 were expected to come from renewable resources." *Id.* (internal citations omitted).

PacifiCorp's experience is consistent with the Commission's recent finding.  PacifiCorp is one of the largest, if not the largest, customer and supporter of independent competitive renewable generation in the

---

[*] *See* National Association of Regulatory Utility Commissioners, Aligning PURPA with the Modern Energy Landscape, A Proposal to FERC at 3–4 (Oct. 11, 2018), *available at*: https://pubs.naruc.org/pub.cfm?id=E265148B-C5CF-206F-514B-1575A998A847) ("PURPA in many situations now works at cross purposes with competition policy" because qualifying facilities displace market competitors selected through utility competitive solicitations).

western United States. PacifiCorp enters into long-term contracts with renewable projects to serve its retail customer demands. As a result of a competitive solicitation issued in 2017, PacifiCorp acquired 1,150 megawatts of power from new wind resources. In 2020, PacifiCorp issued another competitive solicitation for up to 6,000 megawatts of power from various renewable resources. PacifiCorp received 55 bids for projects comprised of just solar or solar and battery energy storage systems. Of those 55 bids, only *eight* of the facilities had a rated capacity for the associated solar resource larger than 160 megawatts.[†] PacifiCorp's final selection of bids included 1,302 megawatts of new solar capacity, and eight of the 10 bids that included solar generation had a smaller rated capacity than 160 megawatts. Thus, Broadview's size is greater than or equal to that of many renewable energy facilities successfully participating in the competitive power market outside of PURPA.

---

[†] The description of PacifiCorp's competitive solicitation is publicly available in the Shortlist Report of Merrimack Energy Group, Inc. to the Utah Public Service Commission in PacifiCorp 2020 All Source Request for Proposals, which was filed with the Utah Public Service Commission in Docket Number 20-35-05 on September 2, 2021, and is available here: https://pscdocs.utah.gov/electric/20docs/2003505/320176RdctdRprtIEMe rrimack9-2-2021.pdf.

Given the robust market available for renewable energy, the Commission need not distort the clear meaning and intent of PURPA to create market advantage opportunities for large-scale renewable projects over non-qualifying-facility competitors of a similar size. *See Dolan v. United States Postal Serv.*, 546 U.S. 481, 486, (2006) (statutory interpretation must consider the purpose of the statute); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 608 (1979) (courts must interpret statutes in light of Congressional intent); H.R. Rep. 95-1750, at 89 (Oct. 10, 1978) ("[t]he power production capacity of the facility means the rated capacity of the facility.").

## II. Broadview Is Not A "Small" Facility, And By Concluding Otherwise, The Commission Effectively Removed The Word "Small" From The Statute

The Commission determined that Broadview falls within the statutory definition of a "small power production facility."  R.30 at P 20, JA__.  But when Broadview's generation equipment is examined, it is obvious that Broadview is not small.  *See supra* Section I (Broadview is larger than non-qualifying-facility competitors).  If Broadview chose not to artificially limit its output to 80 megawatts, Broadview would be

capable of injecting far more than 80 megawatts of power to the grid at one time.

Congress intended the word "small" in the statute to mean something. *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (it is "a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute") (internal quotations omitted). Notably, PURPA requires purchases from both "qualifying small power production facilities" and "qualifying cogeneration facilities," and qualifying cogeneration facilities are not subject to the 80-megawatt size limit. 16 U.S.C. § 796(17)–(18). By specifically including a size limit for small power production facilities in the statute, Congress clearly demonstrated its intent that only a limited subset of power production facilities should be eligible to invoke PURPA's mandatory-purchase obligation and resulting competitive advantages. *Id.*

Yet the Commission's interpretation allows a facility of any size to qualify so long as the facility artificially limits the amount it instantaneously delivers to the grid. The Commission's interpretation in the Rehearing Orders is arbitrary and contrary to the statute because it allows a facility that is plainly not "small" to qualify for favorable

treatment as a "small power production facility," essentially reading the word "small" out of the statutory text. *Market Co. v. Hoffman*, 101 U.S. 112 (1879) ("As early as in Bacon's Abridgment, sect. 2, it was said that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotations omitted).

## III. The Commission's Focus On The Size Of Broadview's Inverters Is Arbitrary And Contrary To The Plain Language Of The Statute

In the Rehearing Orders, the Commission justified its decision to equate Broadview's "power production capacity" with the amount Broadview could deliver to the grid at a single point in time by explaining that the word "facility," as used in "small power production facility," encompasses all of Broadview's components. R.43 at P 19, JA__; R.30 at P 24, JA__. The Commission stated that it would not be appropriate to focus the assessment of a facility's capacity on "specific individual components, which, on their own, could not provide power to the interconnecting utility." R. 43 at P 19, JA__.

But that is exactly what the Commission did in the Rehearing Orders. The Commission ignored its own admonishment and arbitrarily

adopted an interpretation that is wholly dependent on only one component of the facility—the inverters. R.43 at P 20, JA__; R.30 at PP 23, 33, JA__. The power produced by Broadview's solar panels will flow through the inverters to be converted from direct current to alternating current before it flows onto the grid. *See* R.30 at P 5, JA__ (Danly, Comm'r, concurring in part and dissenting in part). Inverters do not produce power, and the inverters by themselves would not be able to provide any power to the utility. *See* R.16 at P 25, JA__ ("The inverters are capable of converting only 80 [megawatts] into AC power, but that is a conversion limit, not a limit on the facility's power production[.]"). Yet under the Commission's Rehearing Orders, the size of the inverters is the sole factor dictating the "power production capacity" of the facility, because the inverters limit how much power the facility can provide to the grid at any point in time. R.30 at P 32, JA__.

The Commission's interpretation in the Rehearing Orders makes the size of the inverters determinative and ignores all other components of the facility. Broadview could propose to install solar panels capable of producing 16,000 megawatts of power, but so long as the inverters limited its instantaneous output to 80 megawatts, the Commission would still

consider it to be a "small power production facility" under the interpretation of that phrase in the Rehearing Orders.  But focusing narrowly on individual non-power producing components of a "small power production facility" to determine its "power production capacity" is not a logical interpretation of the statute, as the Commission recognized. R.43 at P 19, JA__.  This is particularly true when the sole component of the facility relied upon is one that does not actually produce any power. Determining a facility's "power production capacity" by looking at a single component of the facility that cannot produce power is illogical and inconsistent with the plain meaning of the phrases "small power production facility" and "power production capacity." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning . . .").

## CONCLUSION

PacifiCorp respectfully requests that the Court vacate the Commission's Rehearing Orders.

Dated, October 25, 2021

                               Respectfully Submitted,

ADAM LOWNEY                        /s/ Christopher Jones

*Application Pending*           CHRISTOPHER JONES

MCDOWELL RACKNER         *Counsel of Record*

GIBSON PC                      TROUTMAN PEPPER

419 SW 11th Ave, Suite 400     HAMILTON SANDERS LLP

Portland, OR 97205           401 9th Street, NW

(503) 595-3926               Suite 1000

adam@mrg-law.com         Washington, DC 20004

                             (202) 662-2181

                             chris.jones@troutman.com

                             *Attorneys for Amicus Curiae*
                             *PacifiCorp d/b/a Pacific Power*
                             *and Rocky Mountain Power*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 29(a)(G) and 32(g), I certify the following:

This Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this Brief contains 2,292 words, excluding the parts of the Brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1).

This Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this Brief has been prepared in a proportionately spaced typeface using the 2019 version of Microsoft Word in 14-point Century Schoolbook font.


Dated: October 25, 2021


/s/ Christopher Jones
CHRISTOPHER JONES
TROUTMAN PEPPER
HAMILTON SANDERS LLP
401 9th Street, NW
Suite 1000
Washington, DC 20004
(202) 662-2181
chris.jones@troutman.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of October, 2021, I filed the foregoing Brief with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

Dated: October 25, 2021

/s/ Christopher Jones
CHRISTOPHER JONES
TROUTMAN PEPPER
HAMILTON SANDERS LLP
401 9th Street, NW
Suite 1000
Washington, DC 20004
(202) 662-2181
chris.jones@troutman.com